568 P.2d 1116

**Ruth E. EVANS, a divorced woman, Appellant,**

v.

**C. Alfred LISTON, Shirley H. Liston, Cora E. Niner, Norine Simpson and Carol O'Dell, Appellees.**

**No. 1 CA–CIV 3210.**

Court of Appeals of Arizona, Division 1, Department B.

May 26, 1977.

Rehearing Denied July 7, 1977.

Review Denied Sept. 13, 1977.

Hash, Cantor & Tomanek by Virginia Hash, Alena Cantor, Phoenix, for appellant.

Divelbiss, Gage & Cheney by Carl W. Divelbiss, Phoenix, for appellees.

OPINION

WREN, Judge.

Appellant brings this appeal from the trial court's judgment finding that appellant's father lacked testamentary capacity and was acting under appellant's undue influence at the time he executed his will and certain deeds to real property. We find that these conclusions were erroneous and reverse the judgment.

To invalidate a will or deed on the grounds of lack of testamentary capacity, the burden is on the contestants to show that the decedent lacked the ability to know the nature and extent of his property, the ability to know the natural objects of his bounty, or the ability to understand the nature of the testamentary act. *In re Estate of Vermeersch*, 109 Ariz. 125, 506 P.2d 256 (1973); *In re Estate of Teel*, 14 Ariz. App. 371, 483 P.2d 603 (1971); *In re Estate of Pohndorf*, 11 Ariz.App. 29, 461 P.2d 508 (1969). There was no evidence that the decedent lacked any understanding of these elements at the time of execution of his will or the deeds.

The trial judge found that the deceased was senile. The fact that there exists a generally deteriorating mental condi-

tion or that old age is accompanied by mental slowness, poor memory, childishness, eccentricities and physical infirmities does not show lack of testamentary capacity. *In re Estate of Teel,* supra. Mental derangement sufficient to invalidate a will must be insanity so broad as to produce general mental incompetence or insanity which causes hallucinations or delusions. The will must be a product of such delusion or hallucination and the terms of the will must be also a product of such delusion or hallucination and must be actually influenced thereby. *In re Estate of Green,* 40 Ariz. 274, 11 P.2d 947 (1932); also, *In re Estate of Stitt,* 93 Ariz. 302, 380 P.2d 601 (1963); *In re O'Connor's Estate,* 74 Ariz. 248, 246 P.2d 1063 (1952). Under any possible interpretation of the evidence, the decedent was not insane.

The will and the deeds were declared void on the alternative ground of undue influence allegedly practiced by appellant upon her father. A person exercises undue influence over a testator in executing a will when that person through his power over the mind of the deceased makes the latter's desires conform to his own so that the will does not conform to the wishes of the testator but to those of the person exercising the undue influence. *Parrisella v. Fotopulos,* 111 Ariz. 4, 522 P.2d 1081 (1974); *In re Estate of McCauley,* 101 Ariz. 8, 415 P.2d 431 (1966); *In re Estate of Frick,* 13 Ariz.App. 247, 475 P.2d 732 (1970). The burden is on the contestants to prove by *clear and convincing* evidence that the will was procured by undue influence. *In re Estate of Pitt,* 88 Ariz. 312, 356 P.2d 408 (1960); *In re Estate of Frick,* supra. The same test applies to deeds of property. *Amado v. Aguirre,* 63 Ariz. 213, 161 P.2d 117 (1945); *Brewer v. Peterson,* 9 Ariz.App. 455, 453 P.2d 966 (1969).

Eight factors have been identified as tending to establish undue influence. These are 1) whether the person has made any fraudulent representations to the deceased, 2) whether the will was hastily executed, 3) whether such execution was concealed, 4) whether the person benefited was active in securing the drafting and execution, 5) whether the will was consistent with prior declarations of the testator, 6) whether the provisions were reasonable rather than unnatural in view of the testator's attitude, views, and family, 7) whether the testator was susceptible to undue influence, and 8) whether there existed a confidential relationship between the testator and the person allegedly exerting undue influence. *In re Estate of McCauley,* supra; *In re Estate of Frick,* supra. A presumption of undue influence arises when one who occupies a confidential relationship to the decedent is active in procuring the execution of the will and is a principal beneficiary. *In re Estate of Harber,* 102 Ariz. 285, 428 P.2d 662 (1967); *In re Estate of Thompson,* 1 Ariz.App. 18, 398 P.2d 926 (1965). That presumption disappears, however, when the person accused of undue influence denies it. *In re Estate of Pitt,* supra; *In re O'Connor's Estate,* supra; *In re Estate of Thompson,* supra. The relationship of parent and child does not in and of itself constitute a confidential relationship as that term is used in the context of undue influence. *Amado v. Aguirre,* supra; see, *Parrisella v. Fotopulos,* supra.

A careful review of the evidence fails to reveal any fraudulent representations made by appellant to the deceased to induce the making of the will or execution of the deeds. They also cannot be said to have been executed in haste. Although the deceased's lawyer met with him just one day after an altercation with his eldest son to discuss the terms of the will and the deed, execution of the instruments was not until one week later at which time the provisions were read and explained to the decedent prior to his signing. Regarding concealment, there was some evidence that appellant told one sister that the new will left everything to the two of them but there was further evidence that she told other family members that she (appellant) would inherit the whole estate.

Appellant was active in the preparation of the will and deed in that she arranged for the lawyer's visit and accompanied her

father to his attorney's office for the signing of the documents. However, the attorney who prepared the will and deed testified that appellant did not participate in any discussion of the terms of the will or making of the deed. The disposition of the deceased's property was inconsistent with his prior will which provided that except for the barber shop going to the eldest son the six children would share equally. At the time the last will was executed the barber shop was in the hands of the eldest son but substantially all remaining property was left to appellant. Such a final disposition cannot be said to be unnatural in light of the fact that appellant cared for her father during the last year or so before his death.

The testimony was quite clear that the deceased was not the type of person susceptible to undue influence. All who testified remarked upon his stubbornness, his insistence upon driving his own car and handling his own affairs and general strong-mindedness. Finally, there was insufficient evidence that the father-daughter relationship was characterized by such dominance of daughter over father as to constitute a confidential relationship.

Having reviewed the relevant factors for undue influence, it is apparent that the appellees did not provide clear and convincing evidence that appellant deprived her father of his free agency and substituted her will for his. *Brewer v. Peterson*, supra. Not all influence is undue influence. *In re Estate of Accomazzo*, 16 Ariz.App. 211, 492 P.2d 460 (1972); *Brewer v. Peterson*, supra.

Judgment in favor of appellees is reversed and judgment is entered in favor of appellant.

SCHROEDER, P. J., and EUBANK, J., concur.