In the Matter of the CONSERVATOR-
SHIP OF Cleo P. SPINDLE, A
Physically Disabled Person.

Allie Mae COX, Appellant,

v.

Mary Evelyn EDWARDS, Appellee.

No. 61,933.

Supreme Court of Oklahoma.

Oct. 7, 1986.

Rehearing Denied March 3, 1987.

Mordy & Clark, Inc. by James A. Clark
and Cheri Clark, Ardmore, for appellant.

Collins & Collins, Inc. by Lorenzo T. Collins, Ardmore, for appellee.

LAVENDER, Justice:

On April 22, 1983, appellant, Allie Mae Cox, petitioned the trial court to be appointed conservator of the estate of Cleo P. Spindle and Roy Spindle, pursuant to the provisions of 58 O.S.1981 §§ 890.1 through 890.11. It was alleged in the petition that Cleo Spindle was the sister of appellant and that both Cleo and her husband, Roy Spindle, were physically incapacitated and unable to manage their estate.

Prior to the hearing on the petition Roy Spindle passed away. Appellant dismissed her petition as it related to the estate of Roy Spindle.

On May 17, 1983, the trial court entered its order appointing appellant as conservator of the estate of Cleo Spindle. Letters of conservatorship were then issued by the trial court to appellant.

A certificate of deposit had been purchased by Cleo Spindle and Roy Spindle and Roy Spindle's adopted daughter, appellee Mary Evelyn Edwards, on January 13, 1983. This certificate of deposit had been put in the names of these parties as joint tenants. On July 13, 1983, the maturity date of the certificate of deposit, Cleo Spindle executed a instrument directing the bank to add the name of appellant as a joint tenant in the certificate. Several months after the execution of the instrument giving appellant interest in the certificate of deposit, Cleo Spindle also passed away. Appellee, following the death of her step-mother, initiated the present action to set aside the gift of the interest in the certificate of deposit to appellant.

A hearing was held in this matter and testimony presented to the trial court to establish that Cleo Spindle, at the time of the execution of the gift, was competent and was aware of the consequences of her actions. The testimony also established that Cleo Spindle had reason to intend to benefit appellant apart from, and independent of, any influence appellant might have had over her.

The trial court found that beyond a doubt, the gift to appellant met the three requisites of validity in that Cleo Spindle was mentally competent to make the gift, had intended to make the gift and had successfully delivered the gift to appellant. The trial court, however, set aside the gift on the ground that this Court's holding in *Lindsay v. Gibson,*[1] declared that all gifts from the ward to the conservator during the term of the conservatorship are void. Appellant, admitting that this is the holding of *Lindsay v. Gibson,* requests that this Court reconsider the analysis by which the result in *Lindsay v. Gibson* was reached.

In *Lindsay v. Gibson,* this Court relied upon the case of *Daniel v. Tolon,*[2] for the proposition that a gift made by the ward to the conservator during the term of the conservatorship was absolutely void. In *Daniel* this Court had found that a transaction between a guardian and his minor ward, after the ward had reached majority, was voidable during the time the influence arising from the relationship of guardian and ward continued. In that case the evidence of overreaching and abuse of influence by the guardian was abundant. We went on in *Daniel* to state that any transaction between the guardian and ward by which the guardian benefits during the period of influence is presumptively invalid. However, it was also clearly stated that this presumption, while weighty, is rebuttable by sufficient proof.

Upon reconsideration of *Daniel* we interpret the holding there to be that the presumption of invalidity regarding dealings between a guardian and ward continues past the time when the legal relationship may end and extends as long as the relationship of influence by the guardian and dependence by the ward continues to exist. Although the presumption is great, it does not automatically invalidate any gift

**1.** 635 P.2d 331 (Okla.1981).

**2.** 53 Okl. 666, 157 P. 756 (1916).

or transaction. It is this presumption that is in operation at all times during the existence of a legal fiduciary relationship and past that time as long as residual influence continues to flow from the former relationship.[3] Thus, at all times, a transaction may be voidable, but it is not automatically void.[4]

In *Lindsay v. Gibson,*[5] this Court also noted that the courts of California had referred to its conservatorship statutes as an alternative to guardianship proceedings which avoids the stigma of competency findings. However, it has also been noted in that jurisdiction that determinant factors involved in the management of the estate of an aware conservator would differ from those obtaining in the guardianship of an incompetent.[6]

■ Under Oklahoma's statutes relating to the appointment of a conservator,[7] it is provided that the grounds for appointment of a conservator is that the ward "is unable to manage his property" by reason of advanced age or physical disability.[8] The competency of the ward not being at issue, there can be no automatic presumption that the ward is not mentally competent concerning the management of the ward's estate.[9]

■ In the absence of a statute to the contrary, a person of adequate mentality has the right to give away his property to whomsoever he wishes.[10] In the present case we have a specific finding by the trial court that Cleo Spindle had adequate mentality to deal with the disposition of her property. As we have previously stated there is no direct inference which may be made from the mere existence of the conservatorship which may contradict this finding of competency. In *Lindsay v. Gibson,* the Court further relied on the provisions of 58 O.S.1981 § 890.10 as precluding the ability of the ward to make a gift. This section provides:

Upon the appointment of a conservator as herein provided, the ward shall not thereafter have the power to enter into any contract creating an obligation against his estate except for necessaries.

Although this section renders the ward powerless to enter into a contract regarding the disposition of the ward's estate, without a finding of contrary legislative intent, it may not be read to prohibit the ward's ability to make gifts of that property. It is a rule of statutory construction that when the Legislature specifically sets forth a classification to which the legislation is to apply, an implication arises that it does not apply to areas outside that classification.[11] As we read the statutes regarding conservatorship we do not find it necessary to imply a ban on all gifts by the ward to effectuate the legislative intent. Reading those provisions as a whole it is clearly intended that a way be provided to facilitate the handling of the property of a ward when the ward is precluded from doing so by *physical* disabilities. Where the ward clearly has the *mental* capacity to appreciate the consequences of actions affecting the ward's property we do not conclude

---

3. See *Cotcha v. Ferguson,* 165 Okl. 295, 25 P.2d 767 (1933).

4. In *Crume v. Rivers,* 178 Okl. 363, 61 P.2d 862 (1936), cited by appellee in this case, this Court stated that a transfer of the ward's property by the guardian to the guardian's wife was void. In doing so this Court relied on O.S.1931 § 1314, now codified as 58 O.S.1981 § 496. As pointed out in *Culbertson v. McCann,* 664 P.2d 388, 390 (Okla.1983):

A transaction falling under § 496 is not always void, but rather voidable at the discretion of the court if it finds the transaction is not covered by a judicial exception to § 496.... (footnote omitted)

5. 635 P.2d at 333.

6. *In re Conservatorship of Wemyss,* 20 Cal. App.3d 877, 98 Cal.Rptr. 85 (1971).

7. 58 O.S.1981 §§ 890.1 through 890.11.

8. 58 O.S.1981 § 890.1.

9. See *McSpadden v. Mahoney,* 431 P.2d 432 (Okla.1967).

10. *Amado v. Aguirre,* 63 Ariz. 213, 161 P.2d 117 (1945).

11. *Burrell v. Burrell,* 696 P.2d 157 (Alaska 1984); *State v. Wood,* 231 Kan. 699, 647 P.2d 1327 (1982): *Queets Band of Indians v. State,* 102 Wash.2d 1, 682 P.2d 909 (1984).

that the Legislature intended to prohibit the ward's participation or actions in matters affecting that property. On the contrary, the prohibition regarding contracts is clearly intended to protect the ward from those who would seek to take advantage of the ward's decreased *physical* condition in such dealings. As the legislation is designed to compensate for the ward's physical condition by authorizing another to deal with the ward's estate, and thus to assist the ward, we do not infer an intent to penalize the ward by further restricting the ward's rights to exercise power over the ward's estate beyond those restrictions specifically provided.

There remains, however, the fact that the relationship between the conservator and the ward is one of the highest confidence. In that regard, as in all other cases involving a fiduciary relationship, any transactions by the ward which benefit the conservator are to be viewed with a strong presumption against the validity of the transaction. Such presumption, however, may be overcome by clear and convincing evidence establishing the absence of the influence of the relationship in the transaction, the circumstances indicating knowledge of the ward and the good faith of the conservator, she being the party benefiting from the transaction. In the present case the evidence presented by appellant clearly met that burden.

We now take this opportunity to expressly overrule the Court's pronouncements in the case of *Lindsay v. Gibson.*[12] We now hold that a ward is not prohibited by the status of conservatorship from making valid gifts[13] of the ward's assets. We further hold that such a gift may be made by the ward to the conservator, but that in such instance a strong presumption against the validity of such a gift must be overcome by the conservator.

Accordingly the judgment of the trial court is REVERSED and the cause REMANDED for further proceedings consistent with the views expressed in this opinion.

SIMMS, C.J., DOOLIN, V.C.J., and WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, J., concurring specially.

OPALA, J., with whom HARGRAVE, J., joins, dissent. I would stand by this court's pronouncement in *Lindsay v. Gibson,* Okl., 635 P.2d 331 (1981).

HODGES, Justice, concurring specially.

I concur in that part of the majority opinion overruling the case of *Lindsay v. Gibson* and concur in the Court's finding that the gift by the appellant to the conservator was clearly without undue influence, nor in violation of the fiduciary relationship.

While the question was not presented to us on appeal, I write specially to address the quantum of gift the appellant can bestow. At the death of her husband, by virtue of the joint tenancy provision, appellant shared a one-half ownership in the certificate of deposit with the appellee. Unless consented to by appellee, appellant can only make a gift of her one-half interest.

**12.** Supra, at note 1.

**13.** See *McSpadden v. Mahoney,* supra at note 9.